**FILED**

U.S. DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Mar 28, 2019

OFFICE OF THE CLERK

# UNITED STATES DISTRICT COURT

for the
Western District of Arkansas
El Dorado Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID 100021191472583, AND USERNAME FILO.SHARP.50, THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. | No. _____ 1:19-cm-00006 <br><br> **Filed Under Seal** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*:
**See "Attachment A"**

located in the Western District of Arkansas there is now concealed *(identify the person or describe the property to be seized)*:
**See "Attachment B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b) | Persuasion, Inducement, Enticement or Coercion |
| 18 U.S.C. § 2252A(a)(2) | Receipt of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of, or Accessing, Child Pornography |

The application is based on these facts:   See attached affidavit of SA Robert Coleman, FBI

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
SA Robert Coleman, Federal Bureau of Investigation
*Affiant*

Sworn to before me and signed in my presence.

Date: **March 28, 2019**

_____
*Judge's signature*

City and state:   Texarkana, Arkansas

Barry A. Bryant, United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID 100021191472583, AND USERNAME FILO.SHARP.50, THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Robert Coleman, being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with Facebook user ID 100021191472583, and/or username filo.sharp.50, which is stored at premises owned, maintained, controlled, or operated by Facebook Inc. (hereinafter "Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18 United States Code (U.S.C.) Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information (including the content of communications) in its possession, pertaining to the subscriber or customer associated with the Facebook user ID and username identified in Attachment A. Upon receipt of the information, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since June of 2016. Prior to that, I was a narcotics agent with the Mississippi Bureau of Narcotics and a police officer with the Gulfport, Mississippi Police Department. I attended the University of Mississippi in Oxford, Mississippi and obtained a Bachelors of Arts degree in Political Science. I am currently assigned as a Special Agent with the Federal Bureau of Investigations at the El Dorado, Arkansas resident agency. My primary duties are to conduct various criminal investigations to include violent crimes against children involving human trafficking, enticement, child prostitution, and production of child pornography. I have had the opportunity to assist with observing and reviewing examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and cellular devices. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, and I am authorized by the Attorney General to request a search warrant.

3.      The facts and statements contained in this affidavit are based in part on: information provided by FBI Special Agents; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from the service of subpoenas; the results of physical and electronic surveillance conducted by law enforcement agents; independent investigation and analysis by FBI agents/analysts and computer forensic professionals; and my experience, training and background as a law enforcement officer and Special Agent with the FBI. Because this affidavit is being submitted for the limited purpose of securing authorization for the requested search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe

are necessary to establish the necessary foundation for the requested warrant.   Any communications or conversations described herein are not intended as exact transcripts, but are intended to accurately summarize the nature of the communications between the persons identified.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that TEOFILO SHARP, hereafter referred to as "TEOFILO," committed violations of 18 U.S.C. § 2422(b) (persuasion, inducement, enticement or coercion), 18 U.S.C. §§ 2252A(a)(2) (receipt of child pornography), and 2252A(a)(5)(B) (possession of, or accessing, child pornography), and other criminal offenses.   There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of the above-listed crimes, as is described in Attachment B.

**JURISDICTION**

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711, 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A).   More specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**BACKGROUND CONCERNING FACEBOOK**

6.      Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.   Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

3

7.      Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

8.      Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

9.      Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

4

10.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

11.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

12.     Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own

5

profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

13.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

14.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

15.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

16.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

17.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

18.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications (apps) on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

19.     In my experience, Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

20.     Facebook also retains Internet Protocol (IP) logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

21.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service

7

(including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

22. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to

understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

23.    Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## PROBABLE CAUSE

24.    On December 10, 2018, the Hermitage School District was notified of an inappropriate conversation on Facebook between TEOFILO SHARP, hereafter TEOFILO, and an elementary student, now 12 years of age, hereafter referred to as JANE DOE. The conversation referenced a Facebook post made by JANE DOE. The Facebook post contained the question, "Which 3 jobs suit your face?" Within the question, four separate pictures were posted as a collage. The first picture contained a picture of JANE DOE. The second picture contained unknown

9

females and stated, "1. Roller Coaster Girl." The third picture contained an unknown female drinking beer and stated, "2. Beer Taster." The fourth picture contained an animated female dressed as a princess and stated, "3. Disney Princess." The following conversation occurred as comments to the Facebook post between TEOFILO and JANE DOE:

*TEOFILO: #2 and #3 are the Best!!!*

*JANE DOE: FILO SHARP aww Thanks*

*TEOFILO: JANE DOE I mean that would be my options. I would make an excellent princess...maybe*

*JANE DOE: FILO SHARP maybe!! (Emoji cry face)*

Other comments followed and did not involve TEOFILO. A screenshot of the conversations was provided to law enforcement by the Hermitage School District.

25.     On December 12, 2018, the Hermitage School District was notified that TEOFILO had previously authorized JANE DOE and a second elementary student to miss a school period and remain in TEOFILO's classroom. The action was a violation of the school's professional responsibility to manage student behavior.

26.     On December 14, 2018, the Hermitage Elementary School Principal, hereafter referred to as R.E., issued TEOFILO a written reprimand to include notification to refrain from inappropriate exchanges of any kind with students.

27.     On February 21, 26, and 27, 2019, R.E. was informed by separate parents with children attending the Hermitage Elementary School of an inappropriate relationship between TEOFILO and JANE DOE. One of the parents specifically stated that a family member to

10

TEOFILO, hereafter referred to as A.S., had observed a message from TEOFILO to JANE DOE that stated, "Want to bang?"

28.     On February 27, 2019, and March 4, 2019, the Hermitage Elementary School Principal, R.E., notified the Arkansas State Police, Crimes Against Children Division of the inappropriate teacher and student relationship. The incident was then forwarded by the Arkansas State Police to the Bradley County Sheriff's Office ("BCSO"). At that time, BCSO Investigator Brad Johnston initiated an investigation regarding the complaint.

29.     Investigator Johnston contacted JANE DOE's legal guardian in reference to the complaint.  JANE DOE's legal guardian paid for the cellular phone used by JANE DOE. After receiving the grandmother's consent to interview JANE DOE, and to search the phone in JANE DOE's possession, Investigator Johnston responded to the Hermitage Elementary School to interview JANE DOE in reference to the complaint.

30.     JANE DOE advised Investigator Johnston that she was introduced to TEOFILO as a school teacher at the Hermitage Elementary School.  JANE DOE stated she had sent numerous nude photographs and partially clothed photographs to TEOFILO. JANE DOE further stated the only communication between TEOFILO and JANE DOE was done on Facebook. JANE DOE stated she did not communicate with TEOFILO by phone. On one occasion, JANE DOE recalled TEOFILO requesting a vaginal photograph. JANE DOE advised she took a photograph of her vaginal area and sent to TEOFILO via Facebook. At an unknown date, TEOFILO requested JANE DOE delete all previous communication between the two individuals at which time she complied with the request. JANE DOE denied sexual activity with TEOFILO. JANE DOE believed

TEOFILO was attempting sexual activity based on the communication and request for nude photographs.

31.      Investigator Johnston also obtained JANE DOE's cell phone and searched it pursuant to her legal guardian's consent.  In so doing, Investigator Johnston observed multiple photographs contained in the deleted folder of the photographs folder. The photographs contained sexual poses of JANE DOE's buttocks wearing only panties while lying in a bed. Investigator Johnston did not observe cellular communication between TEOFILO and JANE DOE. Furthermore, Investigator Johnston did not observe Facebook communication between TEOFILO and JANE DOE since the communication had been deleted, as previously stated by JANE DOE. Investigator Johnston conducted an open source search of Facebook for a profile account associated to TEOFILO. Investigator Johnston located a Facebook profile name of "Filo Sharp" that contained a profile picture of TEOFILO.  Investigator Johnston identified the profile picture as TEOFILO based on a previously observed Arkansas Driver's License photograph of TEOFILO. The account identified by Investigator Johnston contained the same profile picture as the account that had posted a comment to JANE DOE's Facebook profile, as described above.

32.      A letter was sent to Facebook on March 7, 2019, asking that records and information relating to the above-described account be preserved, pending an application for a search warrant.

33.      On March 7, 2019, Investigator Johnston interviewed A.S. in reference to the incident.  After being advised her Miranda rights, A.S. provided a voluntary written statement.  In it, A.S. stated that she had observed Facebook messages on TEOFILO's phone from JANE DOE. The message from TEOFILO were sexual conversations and TEOFILO asked if JANE DOE

wanted to bang. JANE DOE's response was that she was trying to free up time to do it. TEOFILO also inquired why JANE DOE did not come see him in class. JANE DOE advised she did but TEOFILO was not present at the time.

## IDENTIFICATION OF FACEBOOK ACCOUNT

34.    On March 12, 2019, SA Coleman conducted an online search of Facebook and located a Facebook profile bearing the name "Filo Sharp," which was associated with the username "filo.sharp.50". The profile appeared to have been deleted or suspended, since it contained no profile information or profile picture, as had been seen earlier by Investigator Johnson. From my training and experience, I understand that when a Facebook account is deleted or suspended the profile information (to include the profile picture) is removed. The profile name, "Filo Sharp," remained however. That profile name matches the profile name of the Facebook account previously observed by Investigator Johnston which contained a photograph of TEOFILO, and which had earlier commented on JANE DOE's public post.

35.    A FBI administrative subpoena was issued to Facebook, seeking subscriber information associated with the Facebook profile described in the preceding paragraph. On March 16, 2019, in response to that subpoena, Facebook provided records showing that the "Filo Sharp" Facebook profile I observed on March 12 is assigned User ID 100021191472583 and is associated with the email address filosharp@gmail.com. The email address filosharp@gmail.com was previously provided by TEOFILO on his Hermitage School District Certified Employment Application. Furthermore, TEOFILO also provided, on that application, an additional name of "FILO SHARP." Facebook's records indicate that the Facebook account I observed on March 12,

13

2019, was activated on August 7, 2017.  The records do not contain an account closure date and, in a section called "account still active," state "True."

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

36.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B. Additionally, the Government is seeking any evidence of user attribution such as the subscriber's full name, physical address, telephone numbers and other identifiers, IP address used to post information and e-mail addresses.  This information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users which are critical in this investigation.

## CONCLUSION

37.     Based on the forgoing, I request that the Court issue the proposed search warrant to search Facebook accounts with User name: filo.sharp.50 and User ID: 100021191472583, for subscriber information, Facebook messages, posts, photographs, and any other communications sent via Facebook between the users of the identified accounts and any and all communications between the users of those accounts and other individuals concerning the receipt, possession of, or accessing child pornography along with persuasion, inducement, enticement or coercion. Such information/documentation is evidence of committed violations of 18 U.S.C. § 2422(b)

14

(persuasion, inducement, enticement or coercion), 18 U.S.C. §§ 2252A(a)(2) (receipt of child pornography), and 2252A(a)(5)(B) (possession of, or accessing, child pornography). The Facebook account User Name and User ID were retrieved from the FBI administrative subpoena.

### REQUEST FOR SEALING

38.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

I declare, under penalty of perjury, that the statements above are true and correct to the best of my knowledge and belief.

Robert Coleman
FBI Special Agent

Subscribed and sworn to before me this 28th day of March, 2019.

HON. BARRY A. BRYANT
CHIEF UNITED STATES MAGISTRATE JUDGE

15

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the Facebook user ID 100021191472583, and/or username filo.sharp.50, that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.  Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that has been deleted but is still available to Facebook, or has been preserved pursuant to requests made under 18 U.S.C. § 2703(f) on March 7, 2019, Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

a.  All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

b.  All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

c.  All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

d.  All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past

17

event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e.  All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

f.  All other records of communications and messages (to include Facebook Messenger) made, received, or deleted by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

g.  All "check ins" and other location information;

h.  All IP logs, including all records of the IP addresses that logged into the account;

i.  All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

j.  All information about the Facebook pages that the account is or was a "fan" of;

k.  All past and present lists of friends created by the account;

l.  All records of Facebook searches performed by the account;

m. All information about the user's access and use of Facebook Marketplace;

n.   The types of service utilized by the user;

o.  The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

18

p.  All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

q.  All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

***Facebook is hereby ordered to disclose the above information to the government within 7 days of service of this warrant.***

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of committed violations of 18 U.S.C. § 2422(b) (persuasion, inducement, enticement or coercion), 18 U.S.C. §§ 2252A(a)(2) (receipt of child pornography), and 2252A(a)(5)(B) (possession of, or accessing, child pornography), including (but not limited to), for each user ID identified in Attachment A, information pertaining to the following matters:

(a) Preparatory steps and or any other actions taken in furtherance of the receipt, possession of, or accessing child pornography along with persuasion, inducement, enticement or coercion;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

19

(d) The identity of the person(s) who created or used the Facebook account, including records that help reveal the whereabouts of such person(s);

(e) All videos, photographs, or images used to facilitate or promote the receipt, possession of, or accessing child pornography along with persuasion, inducement, enticement or coercion; and

(f) The identity of the person(s) who communicated with the Facebook account about matters relating to the facilitation or promotion of the receipt, possession of, or accessing child pornography along with persuasion, inducement, enticement or coercion.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

### III.  Method of Service

Items seized pursuant to this search warrant can be served by sending, on any digital media device, to the Special Agent designated via email at the following address: rkcoleman@fbi.gov.

20

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is _____. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.     such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c.     such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____
Date                             Signature

21